IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TRACEY J.,**[1] <br><br> Plaintiff, <br><br> v. <br><br> **COMMISSIONER, SOCIAL SECURITY ADMINISTRATION**, <br><br> Defendant. | Civ. No. 3:22-cv-00725-MC <br><br> **OPINION AND ORDER** |

**MCSHANE, Judge**:

Plaintiff Tracey J. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by (1) finding unpersuasive the medical opinion of Teresa Andreoli, Psy.D. and (2) failing to adequately account for the plaintiff's chronic migraines in the residual functional capacity finding. Pl.'s Br. 10–16, ECF No. 10. For the reasons outlined below, the Commissioner's decision is REVERSED and this matter is REMANDED for immediate payment of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB on May 19, 2019, alleging disability since December 1, 2018. Tr. 63, 186. The claim was denied initially and upon reconsideration. Tr. 74, 98, 106. Plaintiff requested a hearing before an ALJ and appeared before the Honorable Cynthia Rose on January 13, 2021. Tr. 36–60. In a written decision dated March 2, 2021, ALJ Rose determined that Plaintiff was not disabled under the Social Security Act. Tr. 15–30. Plaintiff sought review from the Appeals Council; the Appeals Council declined. Tr. 1.

Plaintiff is currently 53 years old. *See* tr. 39. Plaintiff alleges disability due to chronic migraines, PTSD, degenerative disc disease, knee issues, arm issues, anxiety, and temporomandibular joint disorder. Tr. 62, 78, 190. Plaintiff has completed at least four years of college and graduated from the police academy. Tr. 191. Plaintiff worked as a corrections officer at Columbia River Correctional Institution from July 1995 until December 2018, when she became unable to work due to her medical conditions and workplace harassment. Tr. 191, 192.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (reaffirming the substantial evidence standard in social security cases). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial

evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

### I. Dr. Andreoli's Medical Opinion

Plaintiff argues that the ALJ erred by finding unpersuasive the opinion of examining psychologist Teresa Andreoli, Ph.D. Pl.'s Br. 13–16.

The Ninth Circuit has clarified that under the new regulations, "the former hierarchy of medical opinions – in which we assign presumptive weight based on the extent of the doctor's

relationship – no longer applies." *Woods*, 32 F.4th at 787. Now, an ALJ's "decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* "The most important factors that the agency considers when evaluating the persuasiveness of medical opinions are *supportability* and *consistency*." *Id.* at 791 (emphasis added) (internal quotations omitted); 20 C.F.R. § 404.1520c(a). However, the Ninth Circuit clarified that "the extent of the claimant's relationship with the medical provider – what we will refer to as 'relationship factors' – remains relevant under the new regulations." *Id.* at 790.

Dr. Andreoli examined Plaintiff on June 29, 2019. Tr. 732. The evaluation included a review of records, an extensive psychiatric, medical, and social history, and a mental status exam. Tr. 732–36. Dr. Andreoli then provided a diagnosis and a functional assessment.[2] Tr. 737–38.

The ALJ found that Dr. Andreoli's opinion was supported by her examination of the Plaintiff but not "well explained." Tr. 28. The ALJ also found Dr. Andreoli's opinion that Plaintiff "would not be able to meet the additional demands in the work environment" inconsistent with the record. *Id.* The ALJ's rejection of Dr. Andreoli's opinion is not supported by substantial evidence. Dr. Andreoli's assessment is consistent with the record, which clearly illustrates Plaintiff's inability to meet the additional demands of the workplace.[3]

---

[2] The Commissioner argues that Dr. Andreoli's evaluation is not a "medical opinion" under relevant regulations. Def's Br. 6–8, ECF No. 14. The Court disagrees. A medical opinion "is a statement from a medical source about what [a claimant] can still do despite [their] impairment(s)." 20 C.F.R. § 404.1513(2). A medical opinion states a claimant's "ability to perform mental demands of work activities." 20 C.F.R. § 404.1513(2)(ii). This functional assessment addressed Plaintiff's ability to meet the mental demands of work activities and is therefore a medical opinion under the regulations.

[3] Dr Andreoli is not the only medical professional to opine that Plaintiff's functionality is significantly diminished. Tr. 337, 731, 743, 744, 751.

Plaintiff's ability to effectively meet the demands of everyday life, let alone the workplace, is severely diminished by her impairments. The ALJ cited Plaintiff's "care for her mother and her farm" as one justification for rejecting Dr. Andreoli's opinion. Tr. 28. The record shows the opposite—plaintiff's mother cares for Plaintiff. Plaintiff's mother testified that Plaintiff "tries to help around the house" but "pays for any physical activity with pain" and that "cooking is [Plaintiff's mother's] responsibility." Tr. 266. Plaintiff's sister testified that Plaintiff's mother "helps [Plaintiff] daily because of [Plaintiff's] forgetfulness, depression, and anxiety." Tr. 258. Plaintiff's mother does the lion's share of housework: she cooks meals, does laundry, and completes most grocery shopping for herself and Plaintiff. Tr. 46–47. Further, the ALJ's statement that Plaintiff takes care of her mother's farm runs contrary to the evidence. Plaintiff's farm-care tasks are de minimis. Plaintiff used a riding lawnmower to "just mow around the house" for "short periods of time" in the summer—a task which takes her two days to complete. Tr. 45, 200, 227. Plaintiff's mother must press Plaintiff to mow, and Plaintiff must take a break to rest every thirty minutes. Tr. 210. The Plaintiff's sole other regular "farm work" consists of weeding flowerbeds. Tr. 46–47 (Plaintiff testified that she does no planting). When Plaintiff *does* attempt additional work around the house and farm, she frequently injures herself. *See, e.g.*, tr. 275–276, 279, 285, 316, 327, 339, 341, 637, 671, 807. The record shows that Plaintiff struggles to care for herself and complete rudimentary household and farm tasks.

The other reasons cited by the ALJ for rejecting Dr. Andreoli's opinion are also not supported by the record. First, the ALJ stated that Plaintiff's mood and affect is "often normal" and her alertness and orientation "normal." Tr. 28. To the contrary, the record shows that Plaintiff "lashes out" and is subject to "angry outbursts 'over nothing.'" Tr. 205, 208, 695; *see*

*also* tr. 265. Plaintiff gets angry when she drives. Tr. 231. Next, the ALJ stated that Plaintiff's thinking is "linear and goal-direct[ed]. Tr. 28. However, medical reports indicate that Plaintiff's speech was "rapid" and her through process "tangential." Tr. 611, 697. Plaintiff "gets frustrated" when attempting to follow written directions. Tr. 213. Plaintiff's sister stated that Plaintiff "has trouble focusing" and "needs to have instructions repeated." Tr. 203. Finally, Plaintiff's memory is not reliably "intact" nor is she a reliably "good historian." Tr. 28. The record shows that Plaintiff has issues with memory and recall. Tr. 199, 203, 230, 251, 610, 731. Essential medications further degrade Plaintiff's memory, recall, and focus. Tr. 204, 235. The ALJ's findings that Plaintiff has "normal mood and affect," "linear and goal direct[ed]" thinking, and "intact" memory are not supported by substantial evidence.

The remaining reasons cited by the ALJ for dismissing Dr. Andreoli's assertion that Plaintiff "cannot meet the increased demands of the work environment" are unpersuasive. Tr. 28. The ALJ cites "intact grooming and hygiene, . . . normal alertness and orientation, . . . fluent speech," and completion of otherwise rudimentary daily tasks as justification for dismissing Dr. Andreoli's medical opinion. *Id*. Plaintiff's demonstration of minimal functionality at home and during medical appointments does not demonstrate she can meet additional demands of the workplace. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)).

The ALJ's determination that Dr. Andreoli's evaluation was inconsistent with the record is not supported by substantial evidence. The ALJ erred in rejecting Dr. Andreoli's opinion that Plaintiff "would not be able to meet the additional demands" of the workplace.

## II.   Plaintiff's Migraines and the ALJ's Residual Functional Capacity Finding

Plaintiff argues that the ALJ failed to account for the limitations posed by Plaintiff's chronic migraines when crafting Plaintiff's residual functional capacity ("RFC"). Pl.'s Br. 10–12. The RFC reflects the most activity a claimant can perform in a workplace on a regular and continuing basis despite their limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In that context, regular work means eight hours per day, five days per week, or an otherwise equivalent work schedule. SSR 96–8p, 1996 WL 374184, at *2. The RFC must contemplate all of a claimant's medically determinable impairments ("MDIs"), including all physical, mental, and sensory functional limitations caused by those MDIs. 20 C.F.R. §§ 404.1545(a), 416.945(a). The Commissioner is "responsible for developing [the claimant's] complete medical history, including arrangement of consultative examinations."[4] 20 C.F.R. § 404.1545(a)(3).

The record illustrates that Plaintiff's chronic migraines significantly impact her day-to-day functioning and are poorly controlled by medical treatments. Medical records indicate Plaintiff has suffered from chronic migraines since 2014. Tr. 274, 606. Plaintiff's prior work contributed to increased migraine frequency. Tr. 346. Even on days when Plaintiff is not experiencing a migraine, she has headaches. Tr. 606, 867. Before beginning Botox treatments, Plaintiff had at least fifteen migraines per month. Tr. 611. When Plaintiff first started receiving Botox treatments, the frequency of migraines decreased to four to five migraines per month. Tr. 283. The record indicates that Plaintiff consistently has *at least* two to three migraines per month and that each migraine lasts two or three days. Tr. 283, 308, 314, 782, 822; *see also* tr. 831 (Plaintiff visited doctor on the fourth day of a migraine). Over time the efficacy of Botox

---

[4] Dr. Andreoli's examination of Plaintiff and resulting medical opinion was arranged by the State Disability Determination Services. Tr. 732.

7 – OPINION AND ORDER

treatments diminished. *See* tr. 721, 767 (medical report from 2020 reporting six migraines per month), 782 (report indicating seven migraines per month), 831 (Plaintiff visited doctor on the fourth day of a migraine, which was causing her "worsening severe 9/10 acute" pain). At least once, Botox treatments made Plaintiff's migraines worse. Tr. 717. In a disability determination, one of Plaintiff's doctors indicated her response to migraine treatment was poor. Tr. 705. Plaintiff's chronic migraines are regularly occurring, unpredictable in duration, and poorly controlled.

Despite the facts in the record, the ALJ found that Plaintiff's migraines do "not suggest a need for greater limitations, including absence or off-task limitations." Tr. 23 Based on the facts in the record, Plaintiff must miss—at a minimum—four eight-hour workdays per month due to her chronic migraines. Because Plaintiff's migraines are not "excellently controlled," she cannot schedule those four migraines[5] to occur on weekends or days off. The ALJ found Plaintiff's testimony regarding the "intensity, persistence and limiting effects of" her migraines "not entirely consistent with the medical evidence and other evidence in the record." Tr. 23. However, the record clearly indicates medical professionals' concurrence with Plaintiff's testimony and lay testimony regarding the persistence and impact of Plaintiff's chronic migraines. Plaintiff's migraines will necessitate her absence from work and, given that Plaintiff's migraines might occur at any time, will inevitably force her to cease work tasks due to their severity. Accordingly, the ALJ's finding that Plaintiff's migraines do not "suggest a need for greater limitations" in the RFC is not supported by substantial evidence.

---

[5] It must be emphasized that four migraines per month is the absolute best-case scenario for Plaintiff. Given the degradation in the efficacy of Plaintiff's migraine treatments, it is substantially likely that Plaintiff will have more than four migraines per month.

### III.   Benefits or Further Proceedings

Because the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012), quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, an award of benefits can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

This is a rare instance where remand for an award of benefits is appropriate. Here, Plaintiff satisfies all three requirements. The record is fully developed and there are no ambiguities that further administrative proceedings need resolve. As explained above, the ALJ committed harmful error in discounting Dr. Andreoli's opinion and in failing to account for Plaintiff's chronic migraines in the RFC. Credited as true, these opinions combined with the vocational expert's testimony establish that Plaintiff is disabled under the Act. The vocational expert testified that, in his experience, a person who had to be absent for sixteen or more hours

each month[6] or off task for twenty percent of a workday would be unable to "sustain in any of the jobs" discussed during the administrative hearing, as well as "any other entry-level work" and even "jobs that require no specific training." Tr. 55. Moreover, consideration of the record as a whole convinces the Court that Plaintiff is disabled. The Court sees no purpose for further proceedings.

## CONCLUSION

For these reasons, the Commissioner's final decision is REVERSED and this case is remanded for award of benefits.

IT IS SO ORDERED.

DATED this 22nd day of September, 2023.

s/ Michael J. McShane<br>
Michael J. McShane<br>
United States District Judge

---

[6] *See supra* Section II (At a minimum, Plaintiff's migraines will necessitate her absence from work for thirty-two hours each month).